UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RANDY RUSSELL YBARRA, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL and SGT. LEWIS, <br><br> Defendants. | CAUSE NO.: 3:21-CV-418-TLS-MGG |

OPINION AND ORDER

Randy Russell Ybarra, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Warden Ron Neal in his individual capacity "for compensatory and punitive damages for ordering he be held without exercise or cleaning supplies from January 21, 2021, to June 21, 2021, in violation of the Eighth Amendment[.]" ECF No. 26 at 6. Second, he is proceeding against Sgt. Michelle Lewis in her individual capacity "for compensatory and punitive damages for leaving him in a cell for five days without a working toilet or toilet paper while he suffered with food poisoning before moving him to another cell without a working toilet where his shirt caught fire due to exposed electrical wires in violation of the Eighth Amendment[.]" *Id.* On September 20, 2023, the Defendants filed the Defendants' Motion for Summary Judgment [ECF No. 114]. The motion is fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the Court must "construe all facts in

the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The Eighth Amendment requires prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In evaluating a conditions-of-confinement claim, the Court conducts an objective and subjective inquiry. *Id.* at 834. The objective inquiry asks whether "the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (cleaned up). "An objectively sufficiently serious risk is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (emphasis original) (cleaned up).

Inmates are entitled to be provided with adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences, and services of a good hotel," *Harris v. Fleming*, 839 F.2d 1232, 1235

(7th Cir. 1988). And, "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).

### A. Warden Neal

Ybarra is proceeding against Warden Neal for violating his Eighth Amendment rights by ordering he be held without (1) exercise and (2) cleaning supplies from January 21, 2021, to June 21, 2021. The Court addresses each sub-claim in turn.

*1. Exercise*

"Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). Thus, "[a] deprivation of exercise that prison officials expect will likely result in severe health problems may violate the Eighth Amendment, unless the deprivation is proportionate to a legitimate penological purpose." *Pyles v. Spiller*, 708 F. App'x 279, 282 (7th Cir. 2017); *see also Martin v. Tyson*, 845 F.2d 1451, 1454, 1456 (7th Cir. 1988) (holding a prisoner suffers "no constitutional deprivation" from four month ban on outdoor recreation when "related a legitimate prison concern"). The acceptable duration of a lockdown is guided by the "norm of proportionality," whereby the court balances the length of the lockdown with the reason for its imposition. *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013).

In this case, Warden Neal provides an affidavit, in which he attests to the following facts: On January 21, 2021, Warden Neal placed Indiana State Prison ("ISP") on lockdown after an inmate was killed by another inmate and several threats of retaliation were made by various Security Threat Groups. Def. Ex. B, p. 2, ECF No. 114-2, p. 2 of 4. On February 21, 2021, an

3

ISP Correctional Lieutenant was stabbed and killed by an inmate, and a Correctional Sergeant was severely injured. *Id.* As a result, Warden Neal extended the lockdown until July 19, 2021, in order to perform a facility-wide shakedown to remove weapons from cells and housing areas. *Id.* During this time, inmates were generally restricted to their cells, besides being taken out to shower. *Id.* at 3.

Warden Neal argues summary judgment is warranted in his favor because the extended lockdown was justified by a legitimate penological purpose, as a thorough shakedown was essential to maintain the safety and security of all ISP staff and inmates. ECF No. 115 at 8–9. Ybarra responds Warden Neal was deliberately indifferent for denying him daily time out of his cell for over six months. ECF No. 121 at 14–17. Ybarra argues that he experienced muscle aches, cramps, stiffness, muscle deterioration, headaches, lack of sleep, and depression due to having very little room to move. *Id.* at 24.

Here, both parties agree the entire ISP facility was placed on lockdown for nearly six months after a series of violent incidents and that Ybarra was unable to exercise outside of his cell during this time period. It is also undisputed the lockdown was initiated for a legitimate penological purpose, as Warden Neal provides evidence the lockdown was necessary to perform a complete shakedown and remove weapons from cells and common areas. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (noting the safety and security of the prison facility are legitimate penological objectives). The only question is whether the lockdown was disproportionate to its intended purpose, such that it violated Ybarra's Eighth Amendment rights.

Here, Ybarra does not argue or provide any evidence that the lockdown was excessive in relation to its intended purpose of removing weapons from the prison facility. Specifically, it is undisputed that the prison was placed on lockdown after an inmate was killed and various threats

4

of retaliation were made, and the lockdown was extended after a Correctional Lieutenant was killed and a Correctional Sergeant was seriously injured. Warden Neal attests the lockdown was "necessary and authorized by IDOC policies" in order to "re-establish facility operations and order," and Ybarra provides no evidence disputing that attestation. Additionally, Ybarra does not dispute that he was able to exercise within his cell during the lockdown. *See Roach v. Sheahan*, No. 03-C-6481, 2004 WL 1535841, at *3 (N.D. Ill. July 7, 2004) (concluding "even severe restrictions on outdoor exercise do not violate the Eighth Amendment" where the prisoner has "an opportunity for indoor activities"); *Thomas v. Ramos,* 130 F.3d 754, 764 (7th Cir. 1997) (finding no deprivation where prisoner had room in his cell to do push-ups, sit-ups, step-ups, and jogging in place). Based on the evidence in the record, no reasonable jury could conclude the lockdown violated Ybarra's Eighth Amendment rights by preventing him from exercising outdoors for nearly six months. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012) (holding that correctional administrators must have "substantial discretion to devise reasonable solutions to the problems they face," particularly when safety and security interests are at stake); *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (explaining that when evaluating reasonableness, "courts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Accordingly, the Court grants summary judgment in favor of Warden Neal on Ybarra's claim for violation of the Eighth Amendment based on exercise restriction.

2. *Cleaning Supplies*

Ybarra is proceeding against Warden Neal for denying him access to cleaning supplies during the lockdown. Being deprived of cleaning supplies can violate the constitution if it results

5

in being subjected to unsanitary conditions. *See Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) ("Hygienic supplies sufficient to meet basic needs are constitutionally required[.]").

As discussed above, the Court conducts both an objective and subjective inquiry in evaluating a conditions-of-confinement claim. *Farmer*, 511 U.S. at 834. To satisfy the subjective component, Ybarra must show that Warden Neal was deliberately indifferent to the unsanitary conditions. To do so, he must show Warden Neal "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)).

Warden Neal argues summary judgment is warranted in his favor because he did not know of and disregard a substantial risk of harm to Ybarra. ECF No. 115 at 10–11. He attests to the following facts: During the lockdown, the sanitation department provided cleaning supplies on average three days per week, and inmates were responsible for cleaning their own cells. Def. Ex. B, p. 3. Additional cleaning supplies were to be delivered whenever requested. *Id.* There was no shortage of cleaning supplies during the lockdown, and ISP staff took extra precautions to ensure a safe and disinfected environment due to the COVID-19 pandemic. *Id.*

In his response, Ybarra argues that Warden Neal failed to organize and supervise a sanitation routine, which left him in a cell with filth, trash, food, birds, mice, and insects. ECF

6

No. 121 at 23. He argues cleaning supplies were only provided by the sanitation department once or twice per month. *Id.* at 24–25.

Here, accepting as true that Ybarra only received cleaning supplies from the sanitation department once or twice per month, Ybarra does not dispute that the sanitation department was meant to provide cleaning supplies three times per week and to deliver additional supplies whenever requested. There is no evidence Warden Neal ever observed Ybarra's cell, and Ybarra provides no evidence Warden Neal knew or had any reason to know he was being denied adequate cleaning supplies. Ybarra argues Warden Neal failed to supervise his employees to ensure the sanitation routine was carried out, ECF No. 121 at 21–24, but this is not sufficient to show deliberate indifference. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." (cleaned up)). Because it is undisputed the sanitation department was meant to provide cleaning supplies three times per week and additional supplies whenever necessary, and Ybarra provides no evidence Warden Neal was aware of the sanitation department's failure to carry out this task, there is no evidence by which a reasonable jury could conclude Warden Neal acted with "total unconcern" for Ybarra's welfare in the face of serious risks. *See Stockton*, 44 F.4th at 615. Accordingly, the Court grants summary judgment in favor of Warden Neal on Ybarra's claim for violation of the Eighth Amendment based on a lack of cleaning supplies.

**B.     Sgt. Lewis**

Ybarra is proceeding against Sgt. Lewis for violating his Eighth Amendment rights by leaving him in a cell for five days without a working toilet or toilet paper while he suffered with food poisoning before moving him to another cell without a working toilet where his shirt caught fire due to exposed electrical wires.

Sgt. Lewis provides evidence showing the following facts: On January 28, 2021, Ybarra was transferred from Cell 505 to Cell 528. Def. Ex. C, p. 1, ECF No. 114-3, p. 1 of 6. Sgt. Lewis did not have the authority to change Ybarra's cell, and was not responsible for moving him to Cell 528. *Id.*; Def. Ex. B, p. 4. On January 13, 2021, before Ybarra arrived at Cell 528, a work order was entered for the cell regarding the light fixture. Def. Ex. E, p. 3, ECF 114-5, p. 3 of 27. On January 29, 2021, just one day after Ybarra was moved into Cell 528, the light fixture was repaired and the wiring was fixed. *Id.* On February 1, 2021, a work order was opened for Cell 528 regarding the toilet not flushing properly. *Id.* at 5. The work order was completed on February 15, 2021, and the button on the toilet was replaced. *Id.* On February 16, 2021, another worker order was opened for Cell 528 regarding bad outlet wiring. *Id.* at 4. That work order was completed on February 22 and 23, 2021, and the cell was completely rewired. *Id.* On March 2, 2021, a new work order was opened for Cell 528 regarding the sink and toilet backing up. *Id.* at 8. This work order was completed on March 3. *Id.* Work orders are placed by staff after being informed of an issue, but may only be initiated by a designated supervisor including a Unit Team Manager, Case Manager, or Unit Lieutenant. Def. Ex. B, p. 2. Generally, inmates remain in their cells while work orders are pending, and are only temporarily removed from the cell during the maintenance. *Id.*

Sgt. Lewis argues summary judgment is warranted in her favor because she responded to Ybarra's complaints about his cell by having authorized employees contact maintenance and submit work orders. ECF No. 115 at 16–18. In his response, Ybarra does not dispute that Sgt. Lewis responded to his complaints by causing work orders to be submitted to repair the issues with his cell. ECF No. 121 at 19. Rather, he argues Sgt. Lewis was deliberately indifferent for leaving him in his cell with a non-flushing toilet and faulty wiring while the work orders were

8

pending. *Id.* at 17–19. He argues that, even assuming Sgt. Lewis was not authorized to remove him from his cell, she had an obligation to present the issue to officials with authority so that he could be moved from his cell while the work orders were pending. *Id.* at 20, 27–30, 33.

Here, it is undisputed that each time Ybarra had an issue with his cell, a work order was timely submitted to fix the issue. This alone shows Sgt. Lewis exhibited more than a "total unconcern" for Ybarra's welfare. *See Stockton*, 44 F.4th at 615. While Ybarra argues Sgt. Lewis should have moved him to a new cell while the work orders were pending, it is undisputed Sgt. Lewis did not have the authority to move Ybarra to a new cell. Ybarra speculates that Sgt. Lewis could have done more to help him by contacting biohazard to clean his cell or asking her superiors to move him to a new cell, but Ybarra's belief that Sgt. Lewis could have done more does not show she acted with a "total unconcern" for his welfare. Moreover, the fact that work orders were entered for Ybarra's cell shows that Sgt. Lewis' superiors were aware of the issues. Because the undisputed facts show that each of Ybarra's issues with his cell were remedied by timely work orders, no reasonable jury could conclude Sgt. Lewis was deliberately indifferent to those issues.

Lastly, Ybarra argues that at some point Sgt. Lewis left him in his cell without toilet paper and told him toilet paper was only passed out once a week and that she didn't have any to give him. ECF No. 121 at 18, 35. But this appears to conflict with Ybarra's deposition testimony, where he testified he never directly asked Sgt. Lewis for toilet paper, but rather asked other correctional officers for toilet paper while Sgt. Lewis was standing nearby. ECF No. 114-1 at 20–21; *see Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). Regardless, Ybarra's vague assertion that at some point

Sgt. Lewis stated she did not have any toilet paper to give him is insufficient to show a constitutional violation. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.") (cleaned up). Accordingly, the Court grants summary judgment in favor of Sgt. Lewis on Ybarra's claim for violation of the Eighth Amendment.

For the reasons set forth above, the Court hereby:

(1) GRANTS the Defendants' Motion for Summary Judgment [ECF No. 114]; and

(2) DIRECTS the Clerk of Court to enter judgment in favor of the Defendants and against Randy Russell Ybarra.

Ybarra takes nothing by his Complaint. The Clerk of Court is directed to close this case.

SO ORDERED on April 19, 2024.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT